United States District Court
District of Massachusetts

| | |
|---|---|
| PerkinElmer Health Sciences, Inc., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. ) 22-11412-NMG |
| LabQ Clinical Diagnostics, LLC, | ) ) |
| Defendant. | ) ) ) |

MEMORANDUM & ORDER

GORTON, J.

Pending before the Court are the Motion to Alter Judgment (Docket No. 287) and Motion for Attorneys' Fees (Docket No. 292) of plaintiff and counterclaim defendant PerkinElmer Health Sciences, Inc., now known as Revvity Health Sciences, Inc. ("plaintiff" or "PerkinElmer"). These motions have been filed subsequent to an order of this Court finding in favor of PerkinElmer on all claims and counterclaims in this case. For the following reasons, both motions will be allowed.

I.    **Background**

This case involves a breach of contract dispute between PerkinElmer and defendant LabQ Clinical Diagnostics, LLC ("defendant" or "LabQ"). Between 2020 and 2023, PerkinELmer supplied LabQ with COVID-19 testing kits and, when LabQ failed to pay invoices, brought suit for breach of contract and unjust

-1-

enrichment.  LabQ rejoined that the test kits were faulty and brought counterclaims against plaintiff alleging breach of contract, gross negligence and unfair and deceptive trade practices.

In September, 2025, the Court entered summary judgment in favor of plaintiff on its breach of contract claim and defendant's counterclaims (Docket No. 285).  In its order, however, the Court did not specify the damages to be awarded. Shortly thereafter, plaintiff moved to alter the judgment so as to include an award of damages and prejudgment interest and separately to award attorneys' fees.  Defendant timely opposed.

## II.  Motion to Alter Judgment

### A. Legal Standard

Federal Rule of Civil Procedure 60(a) permits a court, on its own accord or by motion, to correct "a clerical mistake or a mistake arising from oversight or omission."  Rule 60(a) is properly employed where the court intended to include a particular provision in the judgment but neglected to do so. Bowen Inv., Inc. v. Carneiro Donuts, Inc., 490 F.3d 27, 29 (1st Cir. 2007).

Rule 59(e) allows a party to file a motion to alter or amend a judgment within 28 days of its entry. Fed.R.Civ.P. 59(e).  Such motions are the appropriate method for parties

-2-

seeking to revise a judgment to include an award of prejudgment interest. Crowe, 365 F.3d at 92 (1st Cir. 2004).

## B. Application

Plaintiff moves the Court to amend its judgment to include an award of damages of $6,293,575, the amount of unpaid invoices as alleged in the complaint and stipulated to by the parties. Defendant objects on the grounds that the Court did not adjudicate all claims and/or counterclaims on summary judgment and that a question remains as to applicable damages.

The Court disagrees.  It granted summary judgment to PerkinElmer on its breach of contract claim and all counterclaims of LabQ.  In awarding summary judgment to plaintiff, the Court explicitly found that

> LabQ breached its contracts with PerkinElmer by failing to pay more than $6 million for the 2022 invoices. . . .

Docket No. 285 at 10.  While the phrase "more than $6 million" does not equate to $6,293,575, given the factual stipulation entered into by the parties, it is clear that the finding was a reference to the specific amount of unpaid invoices.  The exact dollar value was intended to be included in the final order and its omission was a clerical error of the Court.

Similarly, plaintiff moves pursuant to Rule 59(e) to amend the judgment to include pre-judgment interest in the amount of $2,265,687 and post-judgment interest at the federal rate.

-3-

Defendant objects on the basis that interest cannot be calculated where the principal damages remain in dispute. Defendant agrees, however, that the applicable pre-judgment interest rate is 12% per year.

The contract between the parties specified that PerkinElmer may impose interest on late payments, and, in Massachusetts, such a provision is enforceable. M.G.L. ch. 231, §6C; Sullivan v. Dumont Aircraft Charter, LLC, 695 F. Supp. 3d 173, 196 (D. Mass. 2023). Because the Court has found damages in the amount of $6,293,575, and because it agrees with plaintiff's computation of pre-judgment interest, it will amend its judgment to include interest in the amount of $2,265,687.

Finally, as the initial order did not contain an award of damages, it would be unfair to defendant to require post-judgment interest from the date of that order. The Court will therefore not award post-judgment interest in this case.

The Order dated September 16, 2025, (Docket No. 285) will therefore be amended to include an award of damages in the amount of $6,293,575 and pre-judgement interest in the amount of $2,265,687, for a total of $8,559,262.

III. **Motion for Attorneys' Fees**

Plaintiff moves for attorneys' fees in the amount of $2,217,632 and reimbursements of costs and expenses related to the litigation in the amount of $1,477,260. LabQ challenges the

-4-

motion on the grounds that 1) PerkinElmer is not entitled to fees associated with defending unrelated counterclaims, 2) the contractual language does not allow for collection of any fees and 3) the requested fees are unreasonable.

## A. Legal Standard

With respect to attorneys' fees, Massachusetts follows the American rule and denies recovery of fees absent a contract or contrary statute. In re Volkswagen & Audi Warranty Extension Litig., 692 F.3d 4, 21 (1st Cir. 2012). When a contract between parties provides for fee shifting, as is the case here, the question of what fees are owed is one of contract interpretation. AccuSoft Corp. v. Palo, 237 F.3d 31, 61 (1st Cir. 2001).

## B. Application

The contract between the parties provides that

> [LabQ] shall reimburse PerkinElmer for all costs incurred in collecting any late payments that have not been disputed in good faith within the thirty (30) day payment period, including without limitation, costs of reasonable attorneys' fees.

### i.    Fees Related to Counterclaims

LabQ begins by suggesting that fees incurred relative to plaintiff's defense of defendant's counterclaims are not "costs incurred in collecting late payments." It posits that the counterclaims of breach of contract, gross negligence and unfair

-5-

and deceptive trade practices concerned a distinct theory of the case and relied upon facts and legal theories related to defective products.  The defense of those clams was, therefore, independent from plaintiff's collection of any late payments. PerkinElmer responds that, because the legal theories underlying the counterclaims and defenses were virtually identical, defending the counterclaims was necessary to the collection of the late payments.

Defendant relies on AccuSoft Corp. v. Palo, 237 F.3d 31, (1st Cir. 2001).  In that case, the parties brought dual motions for contempt for violating the terms of the settlement agreement. Id. at 36.  The agreement provided that, upon a breach, the moving party in a contempt action would be awarded attorneys' fees incurred in such proceedings. Id. at 59.  The district court interpreted that language as awarding fees related to the prevailing party's motion for contempt but not in its defense against a competing claim of contempt. Id. at 60.

Conversely, plaintiff relies on Citizens Bank of Massachusetts v. Bahig Bishay, 2002 WL 31375621, (Mass. App. Ct. Oct. 22, 2002), a case in which a plaintiff bank was awarded attorneys' fees related to the collection of a loan.  In that case, defendant lodged counterclaims against the bank that, if successful, would have invalidated the collection of the debt. Id. at *3.  The court found that attorneys' fees incurred in

-6-

defending the counterclaims were appropriately awarded because they were related to the litigation arising out of the collection process. Id.

The Court concludes that the present case is more analogous to the contract interpretation analysis in Accusoft. Just as in Accusoft, this case requires the Court to determine the extent to which a contractual fee shifting provision should be enforced. Also, as in that case, the defendant here has asserted its own, independent claims that may otherwise have been brought notwithstanding the collections action. Defense of those claims was ancillary, not essential, to the collection of the debt. The Court finds that expenses incurred by PerkinElmer in defense of the counterclaims were not to collect the debt and are therefore not transferrable to LabQ under the contract.

Neither party has presented the Court with a description of the fees that would allow it to differentiate those incurred in connection with the claims from those incurred in connection with the counterclaims. The Court will therefore apply a 50% reduction to plaintiff's requested fees and costs.

### ii. Good Faith Dispute of Invoices

Next, LabQ argues that PerkinElmer cannot collect fees related to its collection efforts because LabQ disputed the challenged payments in good faith and within the 30-day payment period. It relies on a May 12, 2022, email from LabQ in which

-7-

it informed plaintiff that there were issues with some of the products it had received.

Even if such communication constitutes a good faith dispute, only one invoice for $771 had been submitted within the prior 30 days. LabQ has not presented any communication that can fairly be construed as a good faith dispute, communicated within the 30-day payment period of any other outstanding invoice. It suggests that PerkinElmer bears the burden of proving the absence of such a dispute but the Court is unaware of any requirement on PerkinElmer's part to prove such a negative. In any event, the Court concludes that the vast majority of invoices at issue were not disputed and that plaintiff is entitled to costs related to their collection.

### iii.   **Reasonableness of Fees**

Defendant argues that the requested fees are unreasonable and that plaintiff should not be awarded fees related to unsuccessful discovery motions or to the pending motion for attorneys' fees itself. Courts in Massachusetts typically employ the lodestar approach when calculating contractual attorneys' fees, wherein fees are calculated by multiplying the number of hours reasonably spent on the case by a reasonable hourly rate. In re Volkswagen & Audi Warranty Extension Litig., 692 F.3d 4, 21 (1st Cir. 2012). Time spent in connection with

fee applications is compensable, albeit often at a reduced rate. Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993).

Plaintiff has submitted to the Court the unobjected-to hourly rates of all attorneys and staff who worked on the case, and the Court therefore concludes that they are reasonable.

Plaintiff has also submitted with its invoices a detailed description of time spent litigating this matter, to which defendant has simply objected as "unreasonable" without further explanation.  The Court therefore concludes that the hours expended on this matter were reasonable.

## ORDER

For the forgoing reasons:

1.  Plaintiff's Motion to Alter Judgment (Docket No. 287) is **ALLOWED**. Plaintiff is awarded damages in the amount of $6,293,575 and pre-judgement interest in the amount of $2,265,687, for a total of $8,559,262.

2.  Plaintiff's Motion for Attorneys' Fees (Docket No. 292) is **ALLOWED**, in part, and **DENIED**, in part. Plaintiff is awarded 50% of the requested attorneys' fees and costs for a total award of $1,847,446.

**So ordered.**


_____
Nathaniel M. Gorton
Senior United States District Judge

Dated: March 23 , 2026